IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 5, 2005

## GARY LEE MILLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 97-B-784     Seth Norman, Judge**

---

### No. M2004-00987-CCA-R3-PC - Filed July 27, 2005

---

The petitioner, Gary Lee Miller, stands convicted of aggravated kidnapping, for which he was classified as a habitual offender and, therefore, ordered to serve 100 percent of his 16-year sentence. *See State v. Gary Lee Miller*, No. M1998-00788-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Mar. 6, 2000). He filed a petition for post-conviction relief alleging ineffective assistance of counsel. After conducting an evidentiary hearing, the post-conviction court denied the petition. Aggrieved by the lower court's ruling, the petitioner now brings the instant appeal. After a thorough review of the issues and applicable law, we affirm the judgment of the lower court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Bruce Poag, Nashville, Tennessee, for the Appellant, Gary Lee Miller.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner was indicted for the especially aggravated kidnapping of the victim, who was his live-in girlfriend.[1] *Id.*, slip op. at 2, 10. On August 1, 1995, the petitioner asked the victim to have dinner with him, and she replied that she had errands to run. *Id.*, slip op. at 2. She then went to visit a female friend who was working at a hotel bar, and the defendant called her there and told her that he was sick of her lies and that she needed to go to their home and move her things out. *Id.* The petitioner called back 10 minutes later and told the victim that if she was not home

---

[1] The victim testified at trial that she and the petitioner were engaged to be married, but the petitioner testified that he was already married and that the two were having a romantic relationship. *Id.*, slip op. at 2, 7-8.

within 30 minutes, he would dissect her cat. *Id.* The victim then went to their home, where the petitioner held her for approximately four and a half hours and beat her. *Id.*, slip op. at 3-6.

Several individuals contacted or visited the victim during this period, but the victim was unable to communicate her distress to them due to the petitioner's threats. *Id.*, slip op. at 3-5. Eventually the victim was able to communicate to her twin brother that she needed assistance when her brother spoke to her on the phone and asked her to say the name "Robin" if she was in distress. *Id.*, slip op. at 3. Her brother subsequently went to the petitioner's home, and when the petitioner would not let him in, the victim's brother went to a neighbor's house and phoned the police. *Id.* When the police arrived, the petitioner answered the door, and the victim stood behind him. *Id.*, slip op. at 4. When the petitioner's back was turned to the victim, the victim was able to communicate to the police that she needed their assistance. *Id.* The victim then left with the police officers, who asked the victim to remove the heavy makeup that the petitioner made her apply so that they could photograph her extensive facial bruising and swelling. *Id.*, slip op. at 4.

Based on this evidence, the defendant was convicted of aggravated kidnapping, for which he received the aforementioned 16-year sentence. *Id.*, slip op. at 2. The petitioner subsequently brought a direct appeal of his sentence, challenging the trial court's failure to suppress certain testimony, the court's failure to dismiss the second superseding indictment in his case because he was denied his right to a speedy trial, and the court's failure to include a jury instruction on the lesser included offense of kidnapping. *Id.* Finding no reversible error, this court affirmed the lower court's judgment.

Thereafter, the petitioner filed a petition for post-conviction relief alleging numerous grounds of ineffective assistance of counsel and a denial of due process because the state elected not to prosecute criminal charges that the petitioner filed against the victim. The post-conviction court conducted an evidentiary hearing in which Teresa Berry, a Tennessee Bureau of Investigation (TBI) forensic technician supervisor, Officer Kevin Jenkins, the petitioner, and the petitioner's trial counsel testified.

Ms. Berry, who supervises evidence in TBI custody, testified that the TBI record log indicated that a knife found on the petitioner at the time of his arrest could not be located at the time of trial, but it had been in continuous TBI custody from September 3, 1997, well before the petitioner's 1998 trial, until the time of the post-conviction evidentiary hearing. Officer Jenkins testified that the police report of the petitioner's crime indicated that the petitioner used a knife on the victim and that it left an abrasion near her left eye. Officer Jenkins further testified that a blood test performed on the knife indicated that the knife did not have any traces of blood on it.

The petitioner testified about the inadequate representation he alleged receiving from his trial counsel. He testified that counsel met with him approximately three times in preparation for trial and that those meetings lasted 20 to 30 minutes each. The petitioner asserted that counsel failed to adequately prepare to argue the petitioner's motion *in limine* to suppress the knife that the state alleged he used while imprisoning the victim and a motion to suppress the victim's testimony

from a parole revocation hearing. Regarding the motion *in limine* to suppress the knife, the petitioner testified that when the court refused to rule on the motion after finding that it had been raised prematurely, counsel should have requested a ruling on the motion at a later point in the trial and that counsel should have included the issue in the petitioner's motion for new trial. Regarding the motion to suppress the victim's statements, the petitioner testified that his counsel should have attached the entire transcript of the hearing with the motion to suppress, rather than attaching only a portion of the hearing transcript.

Additionally, the petitioner testified that counsel failed to adequately prepare his motion to dismiss based on a violation of his right to a speedy trial by failing to inform the court that the petitioner had filed for relief under the Interstate Agreement on Detainers Act (IADA) and by failing to inform the court that evidence was missing at the time of his trial or that a key witness had not been located.

The petitioner further testified that counsel failed to adequately communicate with him and keep him apprised of the events transpiring in his case. Specifically, the petitioner testified that counsel did not apprise him that the state could not locate the knife he used on the victim. Accordingly, the petitioner was surprised by the state's failure to introduce the knife as an exhibit at trial. Furthermore, counsel did not apprise the petitioner that the charges the petitioner filed against the victim were not prosecuted by the district attorney's office. Counsel also did not move to introduce the tape recording of the 911 call in which the instant crime was reported, and counsel did not move for any *Jencks* material.

The petitioner also testified that his counsel advised him that he could receive a 12- to 20-year sentence if convicted of his indicted crimes[2] and that he would be eligible for release after serving 35 percent of his sentence. The petitioner introduced a letter written by counsel addressed to the petitioner after the petitioner's conviction, which informed the petitioner that he would receive a 12- to 20-year sentence with 35 percent release eligibility.

Counsel testified that at the time of the petitioner's trial, he had been practicing law for approximately 30 years and that 75 to 80 percent of his practice was comprised of criminal cases. Counsel testified that he was retained by the petitioner after the petitioner fired his originally retained counsel because the petitioner did not believe that his former counsel was acting on his instructions or sufficiently communicating with him. Counsel recalled that he met with the petitioner 10 to 15 times prior to the petitioner's trial. Counsel testified that the frequent meetings were necessary because the petitioner was very involved in the preparation of his case, and therefore counsel would frequently meet with him to inform him of the case's progress and to provide him with copies of and responses to filed motions.

---

[2] The petitioner was charged with especially aggravated kidnapping and retaliation for past acts, but the jury acquitted the defendant of the latter charge, and accordingly this court did not address this charge in our review of the petitioner's direct appeal. *See id.*, slip op. at 10 n.4.

Counsel recalled that the state made one plea agreement offer to the petitioner after counsel had been retained; previously, the state had made an offer that included a more lenient sentence when the petitioner's former counsel represented him. The petitioner took neither offer. Counsel testified that he advised the petitioner to take the offer extended to the petitioner during counsel's representation of him because counsel believed that the offer included a term of imprisonment substantially less than the term of imprisonment that the petitioner could serve if convicted of his indicted crimes. Counsel further advised the petitioner that the state had moved to enhance his range of punishment and to introduce his prior bad acts.

Counsel opined that he would have accurately advised the petitioner about his likely classification as a habitual offender, thereby requiring him to serve 100 percent of any sentence imposed. Counsel recalled that this formed part of the basis for his recommendation to the petitioner that he accept the state's plea agreement offer. Counsel testified that his letter written to the petitioner after the petitioner's conviction in which counsel misstated the petitioner's release eligibility range was the result of a typographical error and that pretrial counsel had accurately advised the petitioner of his release eligibility range.

Regarding the tape-recording of the 911 call reporting the instant crime, counsel testified that he did not move to introduce the tape because he did not believe that the tape-recording contained any information that would have been beneficial to the petitioner's case. Moreover, counsel was able to cross-examine the individual who made the call at trial.

Counsel was unable to locate one witness, Alan Bratchey, and although the petitioner's family tried to locate Mr. Bratchey as well, they were also unsuccessful. Counsel did not elect to have this individual declared unavailable and therefore introduce the witness's prior testimony because counsel believed that the prior testimony would have been cumulative to other evidence introduced at trial. The petitioner did not inform counsel that he wished to call any other witnesses. Counsel did not call any of the petitioner's family members to testify at trial because they did not have any knowledge about the facts of the crime. Moreover, counsel did not want to risk introducing testimony that attacked the reputation of the victim because in his experience, juries do not respond favorably to this defense tactic.

In preparation for trial, counsel testified that he reviewed all of the state's discovery materials, which was made possible by the state's open file policy. Accordingly, he was not surprised by any evidence or testimony presented by the state at trial. Furthermore, counsel also filed several pretrial motions, including a motion to dismiss based on a violation of the petitioner's right to speedy trial, a motion *in limine* regarding the knife allegedly used by the petitioner, and a motion to suppress certain statements made by the victim. Counsel recalled that the petitioner seemed satisfied with counsel's motions and his arguments in the related hearings. Counsel further testified that he did not attach the entire transcript of the parole revocation hearing to the motion to suppress because only the portion that he elected to attach to the motion was germane to the issues presented.

Counsel further testified that he was aware prior to trial that the knife allegedly used by the petitioner could not be located, and counsel discussed this issue with both the prosecution and the petitioner. When a testifying police officer mentioned the knife at trial, counsel cross-examined him on the issue and elicited from him that the knife was missing. Moreover, counsel testified that the state never attempted to establish that the petitioner used the knife to injure the victim, and the jury did not convict the petitioner of any offense involving the use of a weapon.

Counsel further testified that once he began his representation of the petitioner, the case proceeded to trial in a matter of months and was not continued. During the trial, the petitioner elected to testify on his own behalf against counsel's advice and after being advised by counsel that his prior convictions would be introduced if the petitioner chose to testify. Counsel attempted to lessen the impact that the petitioner's prior convictions would have on the jury by eliciting them from the petitioner during direct examination.

Based on his knowledge of the contents of the 911 call in which the victim's brother reported the instant crime, counsel did not believe that introduction of the tape would have been beneficial. Furthermore, counsel testified that he did not offer any medical proof of the victim's injuries out of concern that the medical proof would reveal that the victim's injuries were more serious and/or extensive than they appeared to be in the photographs that were introduced as evidence.

After the hearing, the post-conviction court issued an order denying the petition. In the order, the court stated its findings and conclusions. (1) The petitioner's claim that counsel was ineffective by failing to adequately confer with him lacks merit because the court accredits the testimony of counsel, who testified that he met with the petitioner between 10 and 15 times, and the court finds the petitioner's credibility questionable because the petitioner fired his previous attorney after making similar allegations of a lack of adequate communication. (2) The petitioner's claim that counsel was ineffective because counsel failed to adequately prepare and argue the petitioner's motions to dismiss and suppress lacks merit because counsel was unaware of the petitioner's prior IADA filing and, therefore, could not have included that information in his motion, and the petitioner's trial was heard within the 180-day period that begins to run after an IADA filing. (3) The petitioner's claim that counsel was ineffective by failing to file a motion to compel exculpatory evidence of scientific testing performed on the knife used by the petitioner that indicates that there was no blood on the knife lacks merit because that evidence would not have aided the petitioner's case and the petitioner was not convicted of any crime involving a weapon. (4) The petitioner's claim that counsel was ineffective by failing to compel medical proof of the victim's injuries that indicate that the victim refused medical treatment lacks merit because the victim's refusal of medical treatment would not have outweighed the impact of the victim's photographed injuries and because counsel made a tactical decision not to introduce medical testimony about the victim's injuries. (5) The petitioner's claim that counsel was ineffective by failing to request a continuance after discovering that a potential witness could not be located lacks merit because the witness was never located. Furthermore, the petitioner's claim that counsel was ineffective by failing to introduce the unavailable witness's prior sworn testimony at trial lacks merit because the witness admitted that he

had consumed several alcoholic beverages on the day in question, thereby lessening his credibility, and because counsel opined that the inclusion of this evidence would have been cumulative and would not have bolstered the petitioner's defense. (6) The petitioner's claim that counsel was ineffective by failing to move for a ruling on his motion *in limine* and by failing to include this issue in the petitioner's new trial motion lacks merit because the motion dealt with the knife, which was never produced at trial and whose existence was ignored by the jury, and the jury did not convict the petitioner of a crime involving a weapon. (7) The petitioner's claim that counsel was ineffective by failing to advise the petitioner of his right not to testify or prepare him to testify lacks merit because counsel testified that he did advise the petitioner that he had a right not to testify and did prepare the petitioner to testify, and the court accredited the testimony of counsel. (8) The petitioner's claim that counsel was ineffective by failing to subpoena an audio-recording of the 911 call made by the victim's brother lacks merit because the petitioner did not introduce any proof at the evidentiary hearing to demonstrate how he was prejudiced by the omission of the recording. (9) The petitioner's claim that counsel was ineffective by failing to adequately cross-examine state witnesses and by failing to move for *Jenck*'s material lacks merit because the petitioner failed to introduce any proof regarding this issue. (10) The petitioner's claim that counsel was ineffective by failing to inform the petitioner that if convicted of his indicted offenses, he would be sentenced to serve 100 percent of any term of imprisonment lacks merit because counsel testified that he informed the petitioner of his correct release eligibility range prior to trial, and counsel's letter written to the petitioner including the incorrect sentencing range reflects a typographical error and was written after the petitioner's conviction. (11) The petitioner's claim that he was denied due process when the state elected not to prosecute the victim for charges filed by the petitioner lacks merit because the issue was not raised on direct appeal and, therefore, has been waived for consideration in this post-conviction proceeding.

The petitioner filed the instant appeal challenging each of the post-conviction court's rulings.

The law is settled that the post-conviction petitioner bears the burden of establishing at the evidentiary hearing his allegations by clear and convincing evidence. Tenn. Code Ann. §40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069.

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 655 n.38, 104 S. Ct. 2039, 2050 n.38 (1984)).

In the instant appeal, the petitioner attacks the post-conviction court's determinations. We will address each of his challenges in turn.

First, the petitioner challenges several issues regarding how counsel handled the missing knife that the state alleged the petitioner used while imprisoning the victim. The petitioner argues that counsel should have sought a ruling on his pretrial motion *in limine* from the trial court during trial. The motion sought to prevent the state from making any allusions to the knife during trial. The court refused to rule on the issue pre-trial, stating that the motion was premature. The petitioner notes that references were made to the knife during trial, and yet counsel did not seek a ruling on the motion *in limine*, object to the references made, or request curative instructions. However, counsel did cross-examine the state's witness who mentioned the knife and through counsel's cross-examination, the jury learned that the knife could not be located and thus was not going to be introduced as evidence against the petitioner. The petitioner further alleges that counsel was ineffective by failing to move to compel the state to furnish the results of tests performed on the knife that indicate that no blood was found on it. However, the state did not allege nor did any witness testify that the petitioner cut the victim with the knife. Rather, the evidence demonstrated that the petitioner held the knife close to the victim's skin, resulting in an abrasion and not a cut.

Moreover, the petitioner was not convicted of an offense involving a weapon. On direct appeal, this court concluded that the evidence introduced at trial was subject to four possible interpretations: "Either the defendant was guilty of false imprisonment with a deadly weapon (especially aggravated kidnapping), false imprisonment resulting in bodily injury (aggravated kidnapping), false imprisonment alone, or is innocent of any wrongdoing." *Gary Lee Miller*, slip op. at 19. Therefore, because the jury was likely instructed that especially aggravated kidnapping required a finding that the petitioner used a deadly weapon whereas aggravated kidnapping did not, and because the jury chose to convict the petitioner of aggravated kidnapping and not his indicted offense of especially aggravated kidnapping, we conclude that the jury disregarded any testimony about the existence of this knife and its role in the instant crime. Accordingly, we hold that the petitioner has failed to demonstrate any resulting prejudice from counsel's treatment of the knife.

Next, the petitioner alleges that counsel failed to adequately confer with him prior to trial and that as a result, the petitioner was uninformed of the evidence against him, including that the police had misplaced the knife. Furthermore, the petitioner claimed that he was unprepared to testify at trial, that counsel did not gather sufficient information from the petitioner to prepare his case, and that counsel did not subpoena the audio-tape of the 911 call reporting his crime. The post-conviction court accredited trial counsel's testimony that counsel met with the petitioner between

10 and 15 times prior to trial and found the petitioner's testimony that counsel only met with him three times to be incredible. The court also accredited counsel's testimony that counsel advised the petitioner against testifying and that after the petitioner decided to testify, counsel prepared the petitioner and discussed counsel's strategy of introducing the petitioner's prior convictions during direct examination. We note that the assessment of witness credibility is entrusted to the sound discretion of the trial court. *See State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, we note that counsel represented the petitioner for approximately four months prior to trial, and 10 to 15 meetings within this period of time demonstrate reasonable communication between counsel and client. Regarding counsel's failure to introduce the audio tape-recording of the 911 phone call made by the victim's brother, we note that counsel testified that he did not believe that the admission of this piece of evidence would have aided the petitioner's defense, and we find that the petitioner has failed to introduce any proof that he was prejudiced by the omission of this evidence.

Next, the petitioner contends that counsel failed to adequately prepare for two motion hearings, specifically the hearing to have the victim's testimony suppressed because it had been tainted by prosecutorial influence, and the hearing to exclude any references to the knife at trial. Regarding his suppression motion hearing, the petitioner asserts that counsel should have introduced the entire transcript of the parole revocation hearing, rather than merely including a portion of the transcript. The petitioner challenged the trial court's ruling on direct appeal, and this court held that although it "would have been the better practice" for counsel to have introduced the entire transcript of the parole revocation hearing when arguing the petitioner's suppression motion, the victim's trial testimony reflects that her testimony was not improperly influenced by the prosecutor and that the prosecutor "prepared the victim to testify but had not told her what to say." *Gary Lee Miller*, slip op. at 15. Moreover, the petitioner did not demonstrate on direct appeal "how this perceived misconduct affected the outcome of the trial," and we hold that the petitioner has similarly failed to demonstrate prejudice in the instant appeal. In his arguments before this court, the petitioner alleges that trial counsel should have provided the trial court with the entire parole revocation transcript, but the petitioner has not alleged what relevant testimony was included in the omitted transcript pages or how the inclusion of these omitted pages would have evidenced that the victim's testimony was tainted and therefore persuaded the trial court to grant his motion to suppress.[3] Furthermore, trial counsel testified at the post-conviction hearing that he included only those portions of the transcript that were germane to the issue raised in the motion.

Regarding his motion to dismiss, the petitioner asserts that counsel should have submitted proof of several facts, which, if considered by the lower court and therefore this court on appeal, would have allowed him to prevail on his motion. This court addressed the propriety of the trial court's denial of his motion to dismiss and affirmed the decision after reviewing the applicable criteria set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972). The petitioner argues that

---

[3] The petitioner made the entire parole revocation transcript an exhibit to his post-conviction hearing. The petitioner notes, as did this court on direct appeal, that trial counsel introduced only nine pages of the transcript when arguing his suppression motion. However, this court is unaware and the petitioner has not alleged which portion or portions of the transcript were included in those nine pages or what relevant testimony is included in the remainder of the transcript.

counsel should have submitted proof to show that the petitioner had asserted his right to speedy trial through his *pro se* filing under the IADA, that an undue delay in his trial may have caused the knife to be missing at the time of trial, that a defense witness could no longer be located due to the delay, and that the petitioner never agreed to any continuances. At the evidentiary hearing, the post-conviction court accredited counsel's testimony that the petitioner never informed him that he had previously filed for relief under the IADA and that counsel was unaware of the petitioner's filing. Moreover, counsel testified that he discussed the motion with the petitioner and that the petitioner seemed satisfied with counsel's preparation of and representation regarding the motion. Furthermore, the petitioner has failed to prove how he was prejudiced by this omission. As the post-conviction court noted, the petitioner was tried within the 180-day time period that begins to run from the date on which a defendant files for IADA relief.[4] Moreover, the petitioner was not prejudiced by the fact that the knife was missing on his trial date.[5] Furthermore, neither counsel nor the petitioner's family were ever able to locate the missing defense witness, who, as discussed below, only would have presented cumulative evidence if he was found and made to testify.

Finally, the petitioner has failed to demonstrate prejudice resulting from counsel's failure to assert in his motion to dismiss that he did not agree to any continuances of his trial date. In the opinion addressing the petitioner's direct appeal, this court held that the petitioner had not asserted his right to a speedy trial until two weeks before his trial date and that the petitioner's failure to assert his right in a timely manner weighed in the state's favor when balancing the factors applicable to determining whether there has been a speedy trial violation. *Gary Lee Miller*, slip op. at 12. However, this court also noted that the fact that the petitioner had not been prejudiced by the delay was the most important factor in this determination and was entitled to the greatest weight. *Id.* In the instant appeal, the petitioner alleges that he was indeed prejudiced by the delay because during the delay, the knife was misplaced and a defense witness disappeared. However, as discussed *infra*, the petitioner has failed to demonstrate that he was prejudiced by either event.

The petitioner avers that counsel was deficient for failing to have the unlocated witness, Alan Bratchey, declared unavailable, thus allowing counsel to introduce Mr. Bratchey's former sworn testimony from the petitioner's parole revocation hearing. However, the petitioner has failed to prove that the inclusion of this testimony would have changed the outcome of his trial. The petitioner asserts that Mr. Bratchey's testimony would have contradicted the victim's testimony on

---

[4] As the post-conviction court correctly noted,

> In IADA requests by defendants to be tried within 180 days, the period does not begin to run until both the court and state have received the petition. *State v. Moore*, 774 S.W.2d 590 (Tenn. 1989). The filing was not entered by the Davidson County Criminal Court Clerk until December 10, 1997. The petitioner was tried on May 11, 1998, well within the 180-day mandatory disposition period under the IADA.

[5] It is not lost on this court that the petitioner both claims prejudice from his speedy trial motion because the knife was lost and claims prejudice from counsel's failure to have the same knife excluded from evidence.

two points: First, the victim testified that she had not consumed any alcohol on the date of the crime, and Mr. Bratchey testified at the revocation hearing that he saw the victim with a beer in her hand. Second, the victim testified that she was not free to leave the petitioner's home once she entered it, and Mr. Bratchey testified at the revocation hearing that after the victim arrived at the petitioner's home, he saw the victim leave the house twice to get something from her vehicle and then return to the house. However, at the post-conviction hearing, counsel testified that the introduction of this evidence would not have aided the petitioner's case because James Bennett offered similar testimony at trial. Indeed, this court's summary of Mr. Bennett's trial testimony reflects that he did offer substantially similar testimony. *See Gary Lee Miller*, slip op. at 7. Furthermore, counsel testified that he did not offer the prior sworn testimony of Mr. Bratchey at trial because he believes that juries often ignore and become bored by duplicative former testimony that is read to them, and the post-conviction court found this to be a sound trial strategy.

Next, the petitioner complains that his counsel failed to adequately investigate the extent of the victim's injuries by not discussing a trial strategy for proving or disproving the extent of her injuries or by calling medical experts to testify about the extent of her injuries. In the post-conviction hearing, counsel testified that he did not call any medical experts to testify regarding the extent of the victim's injuries for fear that the expert testimony would reveal that the victim's injuries were actually worse than they appeared to be in the photographs introduced at trial. The post-conviction court also found that counsel exercised sound trial strategy when making this determination, and the petitioner has failed to allege or introduce any evidence demonstrating that the victim's injuries were less serious than the proof at trial depicted them to be.

Finally, the petitioner alleges that the prosecutor handling his case was biased against him, as evidenced by the prosecutor's refusal to prosecute several charges filed by the petitioner against the victim. However, this claim has been waived. *See* Tenn. Code Ann. § 40-30-106(g) (2003) (stating that a petitioner has waived consideration of an issue if the petitioner failed to raise it in a prior proceeding in a court of competent jurisdiction).

In sum, none of the petitioner's challenges merit relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE